## OFFICE EQUIPMENT CO. et al. v. SMERKE.

### No. 14012.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 19, 1940.

Rehearing Denied Feb. 23, 1940.

Touchstone, Wight, Gormley, Strasburger &. Price, of Dallas, and Todd, Crowley & Thompson, of Fort Worth, for appellants.

Thompson & Barwise and Rogers &' Spurlock, all of Fort Worth, for appellee.

BROWN, Justice.

This is an appeal by defendants, Wm. C. Davis, Sr., and Office Equipment Company, from a judgment rendered jointly and severally against them in a suit for personal injuries alleged to have been sustained by the wife of the plaintiff, F. A. Smerke, in the collision of the automobile in which she was riding alone with one owned by the said defendant Company and driven by its officer, Davis.

The case being tried to a jury, all issues were determined in favor of the plaintiff and a judgment was rendered against de-

fendants for the sum of $3,500, to compensate for the personal injuries sustained by Mrs. Smerke.

The several assignments of error are presented through seven propositions.

The first proposition asserts that the jury's award of $3,500 is excessive and demands a reversal or the requirement of a remitter.

■ Appellate courts are slow to disturb the verdicts of juries, in such matters, unless the verdict, viewed in the light of the facts adduced, shows a bias or prejudice that renders the verdict unjust.

No two cases are ever alike and it would serve no useful purpose for us to attempt to quote from the testimony in commenting upon this proposition.

■ If the jury believed the testimony adduced by the plaintiff—and we are compelled to find that the jury did so—then we do not feel justified in substituting our opinions for theirs.

■ The second proposition urges a reversal on the theory that Mrs. Smerke admitted that she was driving her automobile, immediately prior to the collision, at a rate in excess of 20 miles per hour—within the corporate limits of the City of Fort Worth —and the jury having found that she was not so driving her car at such rate, when the accident occurred, evidences bias and prejudice and requires a reversal.

There might be something to this contention, were it not for testimony before the jury which is utterly at variance with that presented in appellants' brief.

Mrs. Smerke testified that she had brought her car to a stop, near the curb, on her side of the highway, when the collision took place, and she is corroborated by a disinterested eye witness.

With this evidence before the jury, the finding of the jury is supported by the testimony, although Mrs. Smerke testified that prior to the accident she was driving her car at a rate of speed of from 20 to 25 miles per hour.

The third proposition urges a reversal because the trial court submitted the issue of damages in the following form, over appellants' objection that it constitutes a comment upon the weight of the evidence and assumes a disputed fact, viz: that plaintiff sustained any injuries in the accident. This is the charge: "What amount of money, if paid now in cash, do you find

from a preponderance of the evidence would reasonably and fairly compensate the plaintiff for the injuries sustained by Mrs. Smerke as a result of the accident in question?"

■ It is ordinarily required that the fact of an injury, or injuries, be established by a finding based upon the evidence introduced. It is absolutely essential that such a finding be made, if the evidence is sufficient to warrant a finding that no injury was sustained.

If it can be said that the defendants succeeded in adducing testimony which was of such probative force as that, if believed by the jury, it would have supported a finding that Mrs. Smerke did not receive any bodily injury in the accident, then it follows that the criticism of the charge is well taken.

To test the situation, it is but fair to turn the question around: What if the jury had said by its verdict that Mrs. Smerke received no injury. Could such a verdict stand in the light of this record? We do not believe so. We realize that this is a rather close question, before us, but we are confronted with the testimony of Mrs. Smerke, which relates her injuries and sufferings, and we find her corroborated by disinterested witnesses who reached her side, immediately after the collision. They testify to the injury to her head and to the fact that she was "unconscious" and that they bathed her face with cold water to revive her. She is corroborated by her neighbors and friends who saw her, in her home, after she was taken there.

The only testimony offered by the defendants to show that she was not hurt comes from the lips of a physician who was at the hospital, when Mrs. Smerke was taken there, shortly after the accident.

The record does not show who called in this physician. He never treated her, either there or at her home. His testimony shows that he advised that she be taken to her home. This physician, evidently, made no notes of such examination as he may have made. He referred to none and did not testify from notes.

He did not attempt to say what kind of examination he made. He based his statements on his "recollection" solely. In the very beginning of his testimony he says: "So, I, myself examined the patient and asked her of what she complained and she said a general feeling of illness and dis-

tress—nervousness. I didn't find—my recollection is I didn't find any bruises or fractures or lacerations of the skin and things of that kind; she seemed to be pretty nervous and a certain amount of shock, probably, but I didn't find any what we call external evidences of an injury."

We believe that such testimony given in such a manner, in a case, such as the one shown by this record, can be said to go no further than to raise a question of the extent of the injuries.

We are of opinion that the evidence shows without dispute that Mrs. Smerke sustained some injury in the collision.

The record discloses that the defendants tried the case on the theory that Mrs. Smerke's injuries were temporary and not serious and not upon the theory that she sustained no injuries.

If the doctor, on whose testimony the defendants rely to show absolutely no injury sustained by Mrs. Smerke, had shown that he made a minute and careful examination of the patient, that he was not merely depending upon his "recollection" and had given positive and unequivocal testimony to the effect that he, after a careful and minute examination of the patient, saw and found no bruise, no wound, no abrasion and no evidence of any injury sustained by her, in such event the issue would have been raised; but that is not the case before us.

The case of Eastern Texas Elec. Co. et al. v. Joiner, Tex.Civ.App., 27 S.W.2d 917, is not in point, as will be seen by examining the charge, which requests the jury to find what sum would compensate the plaintiff "for the injuries received by him, if any, to his back, spine, pelvis, sacro iliac joint, *and resulting neuritis.*" (Italics ours).

The Court of Civil Appeals condemned the charge because it contained the words "and resulting neuritis", and bottomed such ruling on the fact that whether or not neuritis resulted from the injuries was a disputed issue which the trial court should not have assumed as an existing fact. The case at bar is not like the other case cited by appellants, viz: Texas Employers Ins. Ass'n v. Van Pelt, Tex.Civ.App., 83 S.W.2d 392.

The case before us is not unlike the following cases: Stedman Fruit Co. v. Smith, Tex.Civ.App., 28 S.W.2d 622, writ dismissed; Lloyds Casualty Co. of New York v. Grilliett, Tex.Civ.App., 64 S.W.2d 1005, writ refused.

It is undisputed that Mrs. Smerke was in the wrecked car, that she was "unconscious", immediately after the collision, and that her face was bathed with cold water to revive her. This much is absolutely uncontradicted and comes from wholly disinterested witnesses. This is some injury and there can be no question as to such fact.

The charge of the court in the instant suit does not point out any specific injury but inquires as to the compensation for such injuries sustained, as the jury may find from a preponderance of the evidence resulted from the accident.

The fourth, fifth and sixth propositions complain of the language used by plaintiff's counsel in his closing argument.

The first portion of the argument provoking complaint is as follows: "Now, gentlemen, these lawyers representing this defendant here and his company are smart, and they want you to know it, and Mr. Miller, in order to impress you with how intelligent that he was at the time he examined you, threw his jury list away and proceeded to call you by name even though he had never seen you before. For what purpose? For the only purpose, if you please, to impress on you as to how much sense he has got, how smart he is. Well, I will be frank to tell you that he has got more sense than I have, because I could not call off your names now, but my point in that, gentlemen, is simply this, watch him, watch him. If you don't, he is smart enough that he will make you believe something in this lawsuit that is not so."

We think that a portion of this argument was unjustified.

It is evident that counsel for the defendants did the mental stunt before the jury to impress the jury, and it is not an unreasonable deduction to say that it was done to impress the jurors with his mental acumen. Counsel for the plaintiff had a perfect right to comment upon this matter, but he was not warranted in using the language found in the last sentence quoted. The language referred to charges opposing counsel with an improper motive, and, in effect, accuses him of a purpose to perpetrate a fraud on the jury because of his superior mental ability. There was nothing in the mental stunt done by counsel which warranted the charge that he would

make the jury believe something existed in the lawsuit that did not exist, unless the jurors watched him.

The argument is not unlike that condemned in Indemnity Ins. Co. of North America v. Harris, Tex.Civ.App., 53 S.W.2d 631, writ refused, in which case counsel charged opposing counsel with resorting to "artfulness and craftiness to try to hoodwink twelve honest men."

We think appellants' contention sound as to the vice in the argument.

The next proposition complains of the argument of counsel which arose under the following circumstances: It appears that Mrs. Smerke's family physician was a Dr. Saunders, who lives in Fort Worth and who attended and treated her for some weeks after the accident. The plaintiff did not call Dr. Saunders as a witness and counsel for defendants commented upon the failure to do so, as is shown by the qualification found on the bill of exceptions, and when counsel for plaintiff was making his closing argument he said: "If Dr. Saunders would give any testimony in the slightest degree in variance with the testimony of what Mrs. Smerke has given you or in the slightest degree at variance with the testimony of what Dr. Clay Johnson gave you, don't you know that in his diligence that smart young man from Dallas (counsel for defendants) would have brought him in here and had him testify?"

Speaking for this court, Mr. Justice Speer said, in Traders & General Ins. Co. v. Crouch, 113 S.W.2d 650, 655, writ dismissed: "It is generally hazardous for counsel to argue to the jury that there are other witnesses whom his adversary could have produced, but had failed," and he cites a number of authorities which condemn the practice.

Here we have a different situation: Counsel for defendants commented upon the fact that the plaintiff had not produced as a witness her family physician, who treated her for the injuries she claims she sustained in the collision. Counsel for the plaintiff had a perfect right to answer that argument, but the question presented to us is, did he go too far in his argument, under the circumstances?

■ The physician in question was the family physician of the plaintiff, and, while the defendants had a perfect right to bring him into court and place him on the witness stand, and plaintiff's counsel had the right to so advise the jury, and to tell the jury that the witness was available to the defendants, nevertheless, we do not believe that plaintiff's counsel had the right to indulge in the argument saying, in so many words, that defendants' counsel knew what this witness would have testified to, and knew that his testimony would not be in the slightest degree at variance with the testimony given by Mrs. Smerke and another witness, and if this were not true, the smart and diligent counsel for defendant would have produced the witness and had him to testify.

We believe such argument constitutes testimony from the lips of counsel when he has not been sworn as a witness and when there was no opportunity given to cross examine him.

We do not think there is merit in the remaining propositions and the matters complained of are not likely to occur on another trial.

For the reasons stated, the judgment is reversed and the cause remanded.